Phil PUZZANCHERA and Theresa M. Puzzanchera, his wife, Appellants,

v.

Howard J. GALLAGHER, Phillip N. Toanone, Estate of Garry E. Boden, Appellees.

Phil PUZZANCHERA and Theresa M. Puzzanchera, his wife, Appellants,

v.

Howard J. GALLAGHER, Sr., Appellee.

Supreme Court of Delaware.

July 28, 1969.

Michael N. Castle of Connolly, Bove & Lodge, Wilmington, for appellants.

Wilfred J. Smith, Jr., Wilmington, for appellees.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from the Superior Court's refusal to open up judgments confessed on two promissory notes executed by Phil Puzzanchera and Theresa M. Puzzanchera, his wife.

The factual background of the controversy is that the plaintiffs at one time had owned all the stock of a Pennsylvania corporation which operated a restaurant with a Pennsylvania liquor license. The business was in financial difficulty and was forced to borrow money. The lending banks required the individual stockholders to become co-obligors on the loans.

The plaintiffs decided to try to sell the business in order to pay off the corporate debts and relieve themselves of their obligations on the loans. To this end, negotiations were entered into with Puzzanchera. There is a dispute in this court concerning the intent of Puzzanchera in entering into the negotiations but the trial judge found the fact to be that Puzzanchera sought to acquire the business for his son, a young man recently released from the Army.

As matters turned out, the ultimate sale involved no transfer of cash. The shares owned by the plaintiffs, and all the corporate assets, were transferred to Puzzanchera's son and two other individuals in exchange for the assumption of all the corporate debts, including the two bank loans.

Before the sale agreement was executed, however, the plaintiffs insisted that Puzzanchera indemnify them against any loss by reason of their individual obligations on the bank loans. This ultimately was accomplished on the day before the execution of the sales agreement by the signing by Phil Puzzanchera and Theresa of the two judgment notes in question in this lawsuit, which have had judgment confessed on them in Delaware where the Puzzancheras now live.

At the time all the foregoing was taking place, Phil Puzzanchera was an elected Alderman and the Police Committing Magistrate of the City of Chester, Pennsylvania. The Pennsylvania Liquor Code provides, *inter alia*, as follows:

"No person who holds, either by appointment or election, any public office which involves the duty to enforce any of the penal laws of the United States of America or any of the penal laws of this Commonwealth or any penal ordinance or resolution of any political subdivision of this Commonwealth shall be issued any manufacturer's, importing distributor's or retail dispenser's license,

nor shall such a person have any interest, directly or indirectly, in any such license." (47 Purdon's Pa.Stat., § 4–437).

Based upon this statutory provision, Puzzanchera contends that the parties to the above set forth transaction deliberately set out to enter into a sham designed to circumvent the prohibition in the Pennsylvania Liquor Code against a judicial officer having a direct or indirect interest in a liquor license. This being so, it is argued, the judgment notes in question are illegal and the aid of the courts may not be sought to enforce them.

■ Since the entire transaction took place in Pennsylvania, counsel agreed that Pennsylvania law applies. We agree. Wilmington Trust Co. v. Penna. Co., 40 Del.Ch. 1, 172 A.2d 63. No decision of a Pennsylvania court defining what a direct or indirect interest in a liquor license is has been called to our attention, and we assume there is none. However, the lack of such a definition causes no problem on the record before us.

We will assume, *arguendo*, that the legal argument of Puzzanchera is valid, i. e., that the whole transaction was a sham in order to pass to Puzzanchera ownership of a liquor license in violation of the statutory prohibition. Nevertheless, he has failed to sustain the burden of proving by a preponderance of the evidence that he acquired any interest, direct or indirect, in the license in question. In the court below he asserted that he had no interest at all in the license, intended to acquire none, and, in fact, did not know the purpose of the notes he and his wife had signed. He stated that he signed merely because of his confidence in one of the plaintiffs who asked him to. The trial judge agreed with him that he had acquired no interest in the license but found as a fact that he knew the purpose of the notes.

He now stands before us asserting the direct contrary. He seeks to shift his ground, having lost below, to one which requires the repudiation of his sworn testimony below. We will not permit such blatant inconsistency. Furthermore, the evidence he relies on to support his shift, the affidavit of one of the plaintiffs, is completely inadequate to support his afterthought.

Puzzanchera's counsel, who did not appear in the court below, attempts to get around his client's inconsistency by arguing that as a matter of law, on the facts as found, the notes are clearly illegal under Pennsylvania law. We think, however, that such is not the case.

The trial judge found in essence that Puzzanchera's intent in the transaction was to acquire a business for his son and not for himself. As the negotiations went forward, it became more and more apparent that this could not be accomplished unless the plaintiffs were indemnified against loss by reason of the bank loans. In order to accomplish this, he signed the notes and his son got the business.

■ We see nothing in this circumstance to remotely give him an interest in the business. As the trial judge found, the notes were executed "as a necessary corollary to the completion" of the agreement of sale. It was as though Puzzanchera loaned his son the money. Actually, he did not loan money, but he made his credit available in aid of his son.

While there is no Pennsylvania decision squarely in point, there are two decisions which, by analogy, indicate that a Pennsylvania court in the circumstances at bar would hold that Puzzanchera had acquired no interest, either direct or indirect, in the license in question. See De Michelis License, 65 Dist. & Co.R. 92, holding that an employee compensated with one-half of the profits of the business did not acquire an interest in the license, and Donaldson's License, 85 Dist. & Co.R. 537, holding that where the license was held by one of two men who filed partnership tax returns but who intended that no partnership should exist, the non-holder of the license acquired no interest in it.

In passing, we note that if this case were to be decided by Delaware law, we think the holding would necessarily be that Puzzanchera had acquired no interest in the license. In re Penny Hill Corp., 2 Storey 203, 154 A.2d 888, would seem to be dispositive of the matter. In that case this court held that the prohibitions of 4 Del. C. §§ 307 and 308, against a member of the Delaware Liquor Commission having a direct or indirect interest in the sale or manufacture of liquor were not violated by the Chairman's ownership of premises which he leased to a licensee but retained no control and received no share of the profits.

For the foregoing reasons, the judgment below is affirmed.